**The below described is SIGNED.**



**Dated: September 30, 2014**



**R. KIMBALL MOSIER**
**U.S. Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>Eugene V. McCauley, Jr.,<br><br>               Debtor. | Bankruptcy Number: 10-30907<br><br>Chapter 7<br><br>Judge R. Kimball Mosier |
| J. Kevin Bird, Trustee,<br><br>               Plaintiff,<br><br>v.<br><br>Michael McCauley, an individual; Susan Knorr, an individual; Nancy Gallegos, an individual; Elizabeth McCauley, an individual; and RE McCauley LLC, a dissolved Utah Limited Liability Company,<br><br>               Defendants. | Adversary Proceeding No. 12-2313 |

---

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

---

On March 19, 2014, the Court commenced the trial in this adversary proceeding. The

trial continued through March 20, 2014, and on March 21, 2014, the Court made its ruling from

the bench.  The following findings of fact and conclusions of law augment any findings and

conclusions stated by the Court during the hearing of March 21, 2014.

## I.  FINDINGS OF FACT

The Court did not find any of the Defendants' testimony particularly credible.  They all

failed to remember facts and events of significance, except in those instances where their

testimony supported facts or events that may be helpful to their case.  Notwithstanding the lack

of witness credibility, the following facts are clearly established by the record.

Ruth E. McCauley had four children, Eugene V. McCauley, Jr. (Debtor), Michael G.

McCauley, Susan K. Knorr and Nancy L. Gallegos.  On June 1, 2000, the Debtor was

incarcerated.  At the time of his incarceration, the Debtor was married to Elizabeth McCauley.

Four days after Eugene was incarcerated, Ruth created the Ruth E. McCauley Revocable

Trust (Trust).  Ruth was the sole beneficiary under the Trust and she appointed herself and Susan

co-trustees.  The Trust directed that upon Ruth's death, after paying certain Trust obligations, the

"Trust Estate shall then be distributed . . . with the children of Ruth E. McCauley, to wit, Eugene

V. McCauley, Jr., Michael G. McCauley, Susan K. Knorr and Nancy L. Gallegos, each receiving

equal shares."[1]  On the same day Ruth created the Trust she also executed a separate will

bequeathing all of her property to the Trust.  Sometime after the formation of the Trust, Ruth

quitclaimed property she owned in Lehi, Utah to the Trust.

In November 2002, while Eugene was incarcerated, Yukon Excavation, LLC obtained a

judgment against him in the principal amount of $92,754.03.   In December 2003, the Trust sold

---

[1] Article XVI, paragraph C.

2

its interest in the Lehi property to Wentworth Development LLC.  As part of the transaction,
Ruth received a quitclaim deed to some of the real property the Trust had sold to Wentworth.
The quitclaim deed conveyed proposed lots 1 and 2 of the Bull River Ridge subdivision to Ruth.
In connection with the sale of the Lehi property, the Trust also entered into a 1031 tax exchange
with Everet and Janet West whereby the Trust was to receive real property in Uinta County,
Utah (Ballard Property).  The Ballard Property consisted of a 60-acre tract of ranch land with a
residence, a 120-acre tract of ranch land, and Dry Gulch Irrigation water shares.

On January 23, 2004, Ruth formed RE McCauley, LLC (REM) with herself as the sole
member and manager.  The Trust's 1031 exchange for the Ballard Property was completed in
March 2004.  In June 2004 the Trust conveyed the Ballard Property to REM.  Susan testified that
Ruth transferred the Ballard  property to REM to avoid liability for any potential personal injury
claims.  REM never engaged in any business activities, maintained any business records, or filed
any tax returns.  REM maintained a bank account at Mountain America Credit Union (REM
Account) in May 2005.[2]  Ruth updated REM's records filed with the Division of Corporations
and Commercial Code of the Utah Department of Commerce (Utah Department of Commerce) to
add Susan as a member.  Susan held her REM membership interest in her capacity as Ruth's
personal representative and trustee of the Trust.[3]

---

[2] Although REM maintained several accounts at Mountain America Credit Union, the
REM Account refers to the primary account that the parties used to conduct the transactions
relevant to this case.

[3]Trustee's counsel successfully impeached Susan's testimony at the time of trial, and the
Court finds Susan's prior testimony that she held her REM membership interest in her capacity
as Ruth's personal representative and trustee of the Trust to be more credible.

In February 2004 Susan formed EMSN, LLC.  Susan was EMSN's only member and manager but Susan testified that EMSN was formed at Ruth's request.  In April of that same year, Ruth conveyed lots 1 and 2 of the Bull River Ridge subdivision to EMSN.  There was a home on lot 2, but lot 1 was raw land.  Susan testified that lot 2 was transferred to EMSN to hold for Nancy but she didn't know what was going to happen to lot 1.  There were also water shares associated with the Lehi property that were transferred to EMSN.

Ruth died on July 22, 2006, and Susan became the sole trustee of the Trust.  Under the terms of the separate will, all of Ruth's non-Trust assets were to "pour over" and become assets of the Trust upon her death.  Susan also served as executor of Ruth's will.  Susan failed to maintain any accounting, informal or otherwise, with respect to Ruth's assets or the Trust assets. The evidence before the Court is, at the time of Ruth's death, the Trust had bank accounts at Mountain America Credit Union, a home in Roosevelt, Utah, and a membership interest in REM, but there is no evidence as to the value of the assets.  The Court was not provided with a comprehensive list of the assets or an accounting of the assets that were to be distributed pursuant to the terms of the Trust or the will.

The Defendants offered no accounting of the Trust assets.  The Trustee did introduce into evidence selected statements and checks for one of the Trust's bank accounts.  The statements and checks are clearly only a small portion of the total statements and checks, and the Trustee did not attempt to create a complete picture with respect to the disposition of Trust assets.  The statements show that the Trust's combined accounts totaled over $225,000 in July and August of 2005. By February and March 2007 the Trust's accounts totaled just under $60,000.  At the beginning of November 2007 the accounts totaled just over $90,000.  By the end of November,

Susan had transferred approximately $40,000 to herself and $50,000 to the REM Account. The

funds transferred to the REM Account can be traced to a savings account designated "EVM,"

originally opened while Ruth was alive. All of the Trust's accounts were apparently closed near

the end of November 2007. The selected checks drawn on the Trust's accounts establish that

Michael received just over $58,000 from the Trust in 2006. There were also some selected

statements and checks from the REM Account introduced into evidence. Again, these records

are incomplete, but the checks show that Nancy or her designees received over $18,000 from

REM in 2006.

In January 2007 Nancy was added as a member of EMSN. In September 2007 Susan

sold the water shares owned by EMSN for $90,000. The sale proceeds were distributed to Susan

and Nancy. In December of that year, Susan, as the managing member of EMSN, conveyed lot 1

in the Bull River Ridge subdivision to Michael.

By May 2008 Susan had distributed substantially all of the cash assets of the Trust. The

evidence shows that Michael received over $58,000 from the Trust's accounts, Susan received

approximately $40,000, and approximately $50,000 was transferred to REM. The balance of the

Trust's cash assets in excess of $125,000 is unaccounted for. In May 2008 the home that was

Trust property and the Trust's interest in REM, including the REM Account, remained in the

Trust.

Eugene was released from prison on May 20, 2008, and about that time Susan arranged

for Eugene and Elizabeth to move into and live at the Ballard Property. Within three weeks of

Eugene's release, Susan also arranged to make him a signatory on the REM Account. On the

signatory application prepared under Susan's direction, the Debtor was identified as an

"authorized signer/manager" for REM, his address was listed as REM's address, his phone number was listed as REM's phone number, and his e-mail address was listed as REM's e-mail address. When Susan made Eugene a signatory, there was $49,303.20 in the REM Account. After becoming a signatory on the REM Account, the Debtor was the only party who wrote checks against the account.

After moving into the Ballard Property, the Debtor paid no rent; was responsible for all maintenance and repairs; paid for utilities, water, and taxes; identified himself as the owner and loss payee in an application for homeowner's insurance; and signed a recorded easement in favor of Moon Lake Electric.  Susan disputes that the Debtor had authority to execute the easement.

On March 5, 2009, Susan updated REM's filings with the Utah Department of Commerce to reflect that Elizabeth had become a member and that Susan's status had changed from member to manager.  In April 2009, Susan, as the managing member of EMSN, conveyed lot 2 of the Bull River Ridge subdivision to Nancy.

On July 22, 2010, just before its 2002 judgment was to expire, Yukon obtained a writ of garnishment directed to Susan as trustee for the Trust.  On August 2, 2010 the writ of garnishment was personally served on Susan.  On August 4, 2010 Susan conveyed the home owned by the Trust to herself and her daughters, Sonja Gregersen and Chandra Tucker.  On August 11, 2010 the Debtor paid a $200 overdraft charge and closed the REM Account.  The following day, on August 12, 2010, the Debtor filed a petition commencing his chapter 7 bankruptcy.  In his schedules filed on August 26, 2010, the Debtor identified Yukon as the only creditor having a significant claim against him.

On August 30, 2010 Susan (signing as manager of REM) conveyed the Ballard Property to Michael, Nancy, and herself.  Notwithstanding this transfer of the Ballard Property, the Debtor continues to reside there rent-free.  On September 9, 2010 Susan filed articles of dissolution for REM stating that the reason for the dissolution was to "PUT THE PROPERTY IN OUR INDIVIDUAL NAMES [and] DISSOLVE[ ] THE LLC."  In the articles of dissolution Susan stated that the effective date of REM's dissolution was May 20, 2009.

No information was provided at trial with respect to the value of any of the above-described real property distributed to Michael, Susan, and Nancy.  Susan testified that she kept no summary or accounting of assets owned by the Trust, no record of the value of those assets, and no record of the distribution of such assets that she made to herself and her siblings.  No information was provided at trial with respect to the amount of equity in the real property when it was distributed.   No evidence was introduced at trial showing the value of REM.  No information was provided at trial with respect to the value of the Ballard Property, the encumbrances, if any, on the Ballard Property, or the amount of equity in the Ballard Property.

## II.  JURISDICTION

The Trustee commenced this adversary proceeding seeking a judicial declaration under theories of constructive trust, resulting trust, and alter ego that REM and its remaining assets, including the Ballard Property, belonged to the Debtor on the date that the Debtor filed his bankruptcy petition.  To the extent that the Trustee seeks a determination that REM and its remaining assets are property of Eugene's bankruptcy estate, the Trustee's complaint is a "core"

proceeding, and this Court has jurisdiction under 28 U.S.C. § 157(b)(2)(A), (E) & (O) and 28 U.S.C. § 1334.

Given the nature of the conflict between the parties, it is important for this Court to articulate the boundaries of its jurisdiction. Federal courts have long recognized a "probate exception" to otherwise proper federal jurisdiction. "[T]he probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court."[4] The "probate exception" does not bar federal courts, however, "from adjudicating matters outside those confines and otherwise within federal jurisdiction."[5]

Accordingly, this Court is not deciding, and will not decide, whether Susan properly performed her duties as the trustee of the Trust or executor of Ruth's probate estate. This Court is not deciding, and will not decide, what assets poured into or should have poured into the Trust. This Court is not deciding, and will not decide, what assets or distributions the Debtor was entitled to receive as a beneficiary of the Ruth E. McCauley estate, nor is the Court attempting to equally re-distribute assets of the Ruth E. McCauley estate. Even if Eugene "should" have received more from Ruth's estate, and the Trustee had proved the amount Eugene should have received, this Court cannot order a re-distribution of assets.[6] These determinations fall within the "probate exception" and should be determined by a state court.

---

[4] *Marshall v. Marshall*, 547 U.S. 293, 311–12 (2006).

[5] *Id*. at 312.

[6] It should be clear that the Court is not suggesting that the Trustee would have no claims or remedies to seek an equal distribution of Trust assets to Eugene or damages resulting from the failure to distribute Eugene's equal share to him. The Court is simply reemphasizing that it does not have jurisdiction to address those claims.

Therefore, the decision of this Court is limited to the narrow issue of whether REM and

its remaining assets, including the Ballard Property, are property of the Debtor's bankruptcy

estate under one of three doctrines: (a) constructive trust, (b) resulting trust, or (c) alter ego.

## III.  CONCLUSIONS OF LAW

The Trustee's theory of his case is fairly straightforward.  At the time of Ruth's death

there were substantial assets that could be traced to the sale of real property that Ruth once

owned, located in Lehi, Utah.  Even though Ruth had transferred some of these assets to EMSN,

REM, and her Trust, the Trustee asserts that all of these assets should have been distributed

equally to Eugene, Michael, Susan, and Nancy as provided by Ruth's Trust.  Because Michael,

Susan, and Nancy each received substantial cash in an unknown amount, and a parcel of real

property of unknown value, the remaining parcel of real property, the Ballard Property, is in fact

Eugene's and the Court should so find.  While the Trustee's theory is understandable, the

evidence and the law do not support the remedy the Trustee seeks.

Although the Court is not deciding what Eugene should have received, the Court can

clearly consider evidence of what Eugene should have received as evidence that supports the

Trustee's claims.  For example, intent is an important or essential element of the Trustee's

claims.  Evidence that the value of the assets the Trustee seeks to recover is equal to the value of

the asset Eugene should have received would be supportive of an intent to convey the beneficial

interest in those assets to Eugene.  If the Trustee had proved, or even offered evidence that REM

and its assets equaled or approximated Eugene's equal share of assets to be distributed to him

under the Trust, the Trustee's case may have been stronger.  But the Trustee has convinced the

Court that quite the contrary occurred.  The Trust assets were not evenly distributed, and he has not convinced the Court that the remedy he seeks is warranted or appropriate.

Initially, the Court will address some inconsistencies in the Trustee's factual assertions and the actual evidence before the Court.  The Trustee asserts that during the Debtor's incarceration, "[e]xcept for the Trust's ownership interest in REM . . . , Susan distributed substantially all of the property of the Trust to Michael, herself, and Nancy by May 2008."  The home owned by the Trust was not transferred to Susan until August 2010, however.  The Trustee also asserts that "each of the siblings (except the debtor) received at least one parcel of real property and cash of substantial value."  The evidence does not support the Trustee's suggestion that all of the real property and cash the Debtor's siblings received was from the Trust.  The real property Michael and Nancy received was owned by EMSN.  Nancy and Susan also received a significant amount of cash from the sale of the water shares owned by EMSN.  Even though Susan's testimony with respect to EMSN was vague and evasive, there is no evidence that Ruth, or anyone else, intended that EMSN assets be included in the Trust.  The Court cannot simply ignore EMSN as a separate entity at the Trustee's suggestion.  In fact it is very plausible that Ruth intentionally put assets in EMSN to exclude them from her Trust and the claims of Eugene's creditors.  Even though Susan failed to keep an accounting of Trust assets, the evidence that was offered and received by the Court clearly establishes that the Trust assets were not divided equally among the siblings and that Nancy may have received little or nothing from the Trust, other than distributions of REM's assets.[7]

---

[7] The Court recognizes that the Trustee introduced evidence that Nancy received $15,000 from REM and a one-third interest in the Ballard Property.

**A.  A Member of an LLC Has No Interest in Specific Property of the LLC.**

The Trustee seeks a judicial determination "that REM and its assets (including the Ballard Property) were property of the Debtor and became property of the estate upon filing of his bankruptcy."  In seeking this determination, the Trustee glosses over any distinction between membership interests in REM, which are personalty, and the Ballard Property, which is real property.  He simply equates the two.  The Court cannot simply equate Ruth's, Susan's, or Elizabeth's REM membership interest with an interest in the Ballard Property.  Under Utah law, a member of an LLC has no interest in specific property of the company.[8]  The fact that Elizabeth may have had a membership interest in REM may be considered for evidentiary purposes, but even if the Court were to find that Elizabeth was holding the membership interest for Eugene's benefit, neither Elizabeth nor Eugene have an interest in the Ballard Property simply because of that membership interest.  This is particularly important because the Trustee has not attempted to resolve Ruth's membership interest.

**B.  The Trustee Has Failed to Establish That Elizabeth Was the Sole Member of REM.**

The Trustee asserts that when Ruth died, Susan became the sole member of REM and when REM's filings with the Utah Department of Commerce removed Susan as a member and added Elizabeth as a member of REM, Elizabeth became the sole member.  The Court initially notes that the filings with the Utah Department of Commerce may evidence a membership, but they do not determine membership.[9]  The Trustee does not address the distinction between a

---

[8] Utah Code Ann. § 48-2c-701(2).

[9] *See* Utah Code Ann. § 48-2c-122.

11

member and a membership interest, but makes the conclusory assertion that after Ruth's death

Susan was the sole member of REM.  The Trustee's position appears to be that Ruth's

membership interest was extinguished or merged with Susan's interest when Ruth died but does

not explain how or why.  The evidence before the Court is that Ruth was the organizing and sole

member and manager of REM until May 21, 2005.  When REM's filings with the Utah

Department of Commerce were updated and Susan was added as a member, Ruth was not

removed as a member or as manager.  Under Utah law, a membership interest in an LLC is

personal property regardless of the nature of the property owned by the company.[10] Although a

person ceases to be a member upon their death, the member's personal representative or executor

may exercise the member's rights for purposes of settling the member's estate.[11]  Susan may

have been the sole member after Ruth's death, but she did not hold the only membership interest.

Consequently, even though Susan may have been the only member of REM, Ruth's membership

interest remained an asset of her estate or the Trust.

When REM's filings with the Utah Department of Commerce on March 5, 2009 added

Elizabeth as a member of REM and removed Susan as a member, Ruth's membership interest in

REM remained an asset of the Trust.  An LLC may be managed by members or managed by

managers who are not members and who are identified in annual reports filed with the Utah

Department of Commerce.[12]  When Susan was added as manager, REM became a manager-

managed company.[13]  There is evidence that Elizabeth may have become a member of REM at

---

[10] Utah Code Ann. § 48-2c-701(1).

[11] Utah Code Ann. § 48-2c-708.

[12] Utah Code Ann. § 48-2c-804.

[13] Exhibit 12, Articles of Organization of RE McCauley, LLC, Article 5-Management.

this time, but there is no evidence that she became a manager, and she was not an agent of REM for purposes of its business.[14]

## C.  The Elements of Resulting Trust and Constructive Trust Are Different.

The Trustee fails to specifically address the elements necessary to establish his claims for constructive or resulting trust, but consistently refers to them jointly as if they were equivalent remedies simply because the end result the Trustee seeks is the same.  Resulting trusts and constructive trusts are both equitable remedies that arise by operation of law and may be proved by use of parol evidence,[15] but the two remedies are not equivalent.

The Utah Supreme Court has observed that "the most notable distinction between constructive trusts and other types of trusts, such as express and resulting trusts, is generally the 'intention' element."[16]  There must be a "manifestation of intent" that the transferee should not have the beneficial interest in the property before the court may impose a resulting trust.[17]  Aside from the exception described below, "constructive trusts generally are not based upon the 'intention' of the parties."[18] "A constructive trust is an equitable remedy to prevent unjust enrichment, and a purchase money resulting trust is an equitable remedy designed to implement

---

[14] Utah Code Ann. § 48-2c-802(2)(b).

[15] *Zion's First Nat'l Bank v. Fennemore (In re Estate of Hock)*, 655 P.2d 1111, 1114 (Utah 1982).

[16] *Parks v. Zions First Nat'l Bank,* 673 P.2d 590, 598 (Utah 1983).

[17] *Id.*

[18] *Id.*

13

what the law assumes to be the intentions of the putative trustor."[19]  As the Utah Supreme Court

has explained,

> The constructive trust * * * is to be distinguished from a resulting trust. Where
> A's money is used by B with A's consent in purchasing property in the name of
> B, a resulting trust arises in favor of A. Where A's money is used by B without
> A's consent in purchasing property in B's name, B holds the property upon a
> constructive trust for A. In the former case, the resulting trust arises because of
> the presumed intention of the parties. In the latter case, the constructive trust is
> imposed upon B to prevent his unjust enrichment.[20]

One exception to the general rule that constructive trusts are not based on the intention of

the parties is where a constructive trust is imposed to give effect to an oral express trust. Oral

express trusts, like traditional trusts, are the manifestation of a settlor's intent to impose

obligations on a trustee to act for the benefit of others.[21]  It should be noted that there is a

difference between the intent required to establish a resulting trust and the intent required to

establish an oral express trust. As one court explained:

> The difference appears to be that in the case of an express trust the circumstances
> give rise to an inference that the grantor had an affirmative intention to create a
> trust, whereas in the case of a resulting trust the circumstances give rise to an
> inference that [the] grantor had no intention to give the beneficial interest to the
> transferee.[22]

In other words, the difference between an intent to convey the beneficial interest as opposed to

an intent to retain the beneficial interest.

In summary, a court may impose a resulting trust if it finds that the circumstances give

rise to an inference that the transferor had no intention to convey the beneficial interest to the

---

[19] *In re Estate of Hock*, 655 P.2d at 1114.

[20] *Hawkins v. Perry*, 253 P.2d 372, 375 (Utah 1953).

[21] *Rawlings v. Rawlings*, 240 P.3d 754, 762 (Utah 2010).

[22] *Belton v. Buesing (In re Estate of Buesing)*, 402 P.2d 98, 101 (Or. 1965).

14

transferee.  A court may impose a constructive trust to give effect to an oral express trust when

the circumstances give rise to an inference that the transferor intended to create a trust or where a

party has been unjustly enriched.


**D.  The Trustee Has Failed to Establish His Claim For a Resulting Trust.**

"[T]he proof required to impose a resulting trust 'must be strong, clear, and convincing,

such as to leave no doubt of the existence of the trust,' and that it is the intention 'at the time of

the transfer and not at some subsequent time which determines whether a resulting trust

arises.'"[23]  The party claiming a resulting trust cannot satisfy its burden of proof merely by

presenting some evidence in support of its claim.[24]  The party asserting a resulting trust bears the

burden of proving the existence of the resulting trust by the clear and convincing standard, which

requires "evidence demonstrating 'that there is no serious or substantial doubt as to the

correctness of the conclusion.'"[25]

A resulting trust arises in favor of the person who transfers the property, or in the case of

a purchase money resulting trust, the person who pays for the property transferred.  To prevail on

his resulting trust claim, the Trustee must establish that Eugene was the transferor and did not

intend that the person taking or holding the property, or a third person, should have the

---

[23] *Taylor v. Rupp (In re Taylor)*, 133 F.3d 1336, 1341 (10th Cir. 1998) (quoting
*Chambers v. Emery*, 45 P. 192, 195 (Utah 1896) and Restatement (Second) of Trusts § 443 cmt.
a).

[24] *See Baker v. Pattee*, 684 P.2d 632, 638 (Utah 1984) ("No resulting trust could come
into being, as the plaintiff did not prove that [the deceased] intended anything but an
unconditional conveyance of her property.").

[25] *Nikols v. Goodman & Chesnoff*, 206 P.3d 295, 298 (Utah Ct. App. 2009) (quoting
*Northcrest, Inc. v. Walker Bank & Trust Co.*, 248 P.2d 692, 698 (Utah 1952).

15

beneficial interest therein.  The Court could simply deny the Trustee's resulting trust claim because he failed to identify any disposition of property that may give rise to a resulting trust.

For the Trustee to prevail on this resulting trust claim, he must establish that Eugene transferred (or was the successor to the transferor), or that Eugene paid for Elizabeth's REM membership.  The Trustee has failed to present any evidence to meet this element of his claim, but simply asserts that the beneficial interest is held for Eugene.  There is no evidence that Eugene ever acquired a membership interest or transferred a membership interest to Elizabeth.  In fact, there is virtually no evidence as to how Elizabeth obtained her alleged membership interest.

Prior to REM's formation, the Ballard Property was an asset of the Trust and under Ruth's control.  Ruth acquired her membership interest when she formed REM.  Although Susan was subsequently listed as a member, the evidence, including Susan's own testimony, is that Ruth intended to retain the beneficial interest in REM.  Ruth was the manger of REM and retained control of REM's assets, including the Ballard Property.  The evidence is that all the beneficial interest in REM was still retained by Ruth when she listed Susan as a member of REM.  Based on the filings with the Utah Department of Commerce, there is no evidence that there was a transfer of any membership interest when Ruth died.  Because Ruth's membership interest was unaffected by the filings with the Utah Department of Commerce or Ruth's death, her membership interest, including all of the beneficial interest in REM, was intact on the petition date.

The filings with the Utah Department of Commerce are the only evidence that Elizabeth obtained a membership interest in REM.  Because Ruth's interest was unaffected by any state filings, Elizabeth could only have acquired her membership interest from Susan or directly from

16

REM.  Ruth's, Susan's and Elizabeth's failure to follow the statutory requirements not only has

implications for formal or actual membership, but also for any intended membership.  There is

no evidence that Susan or Elizabeth paid any consideration for their alleged membership

interests.  Because Susan and Elizabeth took no formal steps to become members of REM, there

is no clear and convincing evidence that they were intended to be given any beneficial interest.

The evidence is insufficient to establish that Elizabeth received a beneficial interest in REM, but

more importantly, it is clearly insufficient to establish that the beneficial interest in Elizabeth's

membership was retained for Eugene.


**E.  The Trustee Has Failed to Establish His Claim For a Constructive Trust**.

The Court must look to state law "to determine when the constructive trust doctrine

applies,"[26] and "[t]he party seeking imposition of a constructive trust bears the burden of

establishing the trust requirements."[27]  Under Utah law, the proponent must demonstrate by clear

and convincing evidence that a constructive trust should be imposed.[28]  In its most recent

decision addressing constructive trusts,[29] the Utah Supreme Court explained that constructive

trusts are a remedy that may be imposed where necessary to give effect to an oral express trust or

where a party has been unjustly enriched. The Trustee asserts that Elizabeth and Susan were the

---

[26] *Amdura Nat'l Distribution Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1452 (10th Cir. 1996).

[27] *Hill v. Kinzler (In re Foster)*, 275 F.3d 924, 926 (10th Cir. 2001).

[28] *Hiltsley v. Ryder*, 738 P.2d 1024, 1026–27 (Utah 1987) (citations omitted).

[29] *Rawlings v. Rawlings*, 240 P.3d 754, 761–62 (Utah 2010).

17

Debtor's nominees under a constructive trust,[30] but it is not at all clear whether the Trustee is

alleging a constructive trust should be imposed to give effect to an oral express trust or as a

matter of equity because a party has been unjustly enriched.

**1. The Trustee Has Failed to Establish an Oral Express Trust.**

In the *Rawlings* case, the Utah Supreme Court explained the elements of an oral express

trust as follows:

> Oral express trusts have "certain fundamental characteristics" in
> common with traditional trusts because, like traditional trusts, they
> are the manifestation of a settlor's intent with regard to property.
> The main such characteristic is the imposition of obligations on a
> trustee "to act for the benefit of [beneficiaries] as to matters within
> the scope of the [trust]." Like trusts created by a valid writing,
> constructive trusts imposed to give effect to oral express trusts are
> adequately characterized as "'a fiduciary relationship with respect
> to property, arising as a result of a *manifestation of an intention to
> create it* and subjecting the person in whom the title is vested to
> equitable duties to deal with it for the benefit of others.'"[31]

Oral express trusts will be given effect and "constructive trusts may be imposed in the

circumstances set forth in section 45 of the Restatement (Second) of Trusts (the 'Restatement of

Trusts'). This section applies when the transferor of land intends for the transfer to benefit

someone other than the transferor or the transferee."[32] Section 45 of the Restatement of Trusts

provides:

> (1) Where the owner of an interest in land transfers it inter vivos to another in
> trust for a third person, but no memorandum properly evidencing the intention to
> create a trust is signed, as required by the Statute of Frauds, and the transferee
> refuses to perform the trust, the transferee holds the interest upon a constructive

---

[30] Trustee's Complaint, Second Claim for Relief, at 6–7.

[31] *Rawlings*, 240 P.3d at 762 (citations omitted).

[32] *Id.* at 762.

> trust for the third person, if, but only if, (a) the transferee by fraud, duress or undue influence prevented the transferor from creating an enforceable interest in the third person, or (b) the transferee at the time of the transfer was in a confidential relation to the transferor, or (c) the transfer was made by the transferor in anticipation of death.[33]

"In short, the imposition of a constructive trust under this section of the Restatement of Trusts requires proof that the transferor of land intended to create a trust and that one of the three identified circumstances existed at the time of the transfer."[34]

The Trustee argues that "[t]he Debtor's legal interest is proved by the fact that Elizabeth held her membership interest as trustee under an express trust (which can be implied under the circumstances) . . . ."[35]  It appears the Trustee is asserting that Elizabeth was the "transferee" or "the person in whom the title is vested" pursuant to an oral express trust, but he has not attempted, and has therefore failed, to identify the settlor of the express trust, any manifestation of an intent to create an express trust, or a transfer pursuant to an oral express trust.  REM was created by Ruth, and there is evidence that Susan held her membership interest in REM pursuant to Ruth's oral express trust for the benefit of her siblings.  There is no evidence that the beneficial interest Susan held in trust for all of the siblings was given to Elizabeth.  While Susan's and Elizabeth's testimony regarding Elizabeth's membership interest was vague and evasive, it certainly was not helpful in establishing an intent to create an oral express trust.

---

[33] Restatement (Second) of Trusts § 45 (1959).

[34] *Rawlings*, 240 P.3d at 762.

[35] Trustee's Trial Brief at 16.  The Trustee cites no legal basis for his proposition that an express trust can be implied.  By definition, implied is not express.  The Court will assume the Trustee is arguing that the Court may infer that Elizabeth was holding the REM membership interest pursuant to an oral express trust based on the evidence he has presented.

More problematic for the Trustee is that there is no evidence that "one of the three identified circumstances existed at the time of the transfer."  There is no suggestion that Elizabeth by fraud, duress or undue influence prevented Susan or REM from creating an enforceable interest in Eugene, or that any transfer to Elizabeth was made in anticipation of death.  As to the circumstance of a confidential relationship: "A confidential relationship arises when one party, after having gained the trust and confidence of another, exercises extraordinary influence over the other party. If a confidential relationship exists between two parties to a transaction, and if the superior party (in whom trust has been reposed) benefits from the transaction, a presumption of undue influence is raised."[36]  There is no evidence that there was a confidential relationship between Elizabeth and Susan.

### 2.  The Trustee Has Failed to Otherwise Establish a Constructive Trust.

Under Utah law, "[c]ourts recognize a constructive trust as a matter of equity where there has been (1) a wrongful act, (2) unjust enrichment, and (3) specific property that can be traced to the wrongful behavior."[37]  "To establish a wrongful act under Utah law, an entity must have obviously received funds by mistake or participated in active or egregious misconduct."[38] "A claim for unjust enrichment in Utah requires proof of three elements: '(1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and

---

[36] *In re Estate of Jones v. Jones*, 759 P.2d 345, 347 (Utah Ct. App. 1988) (citations omitted).

[37] *Wilcox v. Anchor Wate Co.*, 164 P.3d 353, 362 (Utah 2007) (citation omitted).

[38] *Wilcox*, 164 P.3d at 362 (citations omitted).

(3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value.'"[39]

While the Trustee ultimately seeks recovery of the Ballard Property, his claim for constructive trust relates to Elizabeth's membership interest.  Again, the Trustee has failed to address the specific elements of his constructive trust claim and generally argues that Elizabeth "would be unjustly enriched if she were permitted to retain [her membership interest] in derogation of the Debtor's equitable interest."[40]  The Trustee's overall tenor in this case is that the alleged transfer of the REM membership to Elizabeth was wrongful to Eugene's creditors.  As the Tenth Circuit has noted, the court must view the situation from the position of the party claiming ownership of the equitable interest—not that party's creditors—to determine whether it would be wrong to let the conferree keep the property.[41]  Even if the Trustee's argument that the Defendants and Eugene acted with the intent to keep Trust assets from the reach of Eugene's creditors is correct, the Trustee has not argued, and the Court fails to see, how it could be wrongful to Eugene to let Elizabeth keep her membership interest.

Under the Trustee's theory, the benefit conferred on Elizabeth is her apparent membership interest in REM and she holds the entire ownership interest in REM for Eugene's benefit.  The only evidence the Trustee relies upon for this proposition is the fact that Elizabeth is Eugene's wife, that she was not a beneficiary of Ruth's Trust and that she disavows any knowledge of receiving a membership interest in REM.  The Trustee also asserts that each of

---

[39] *Rawlings*, 240 P.3d at 763 (citation omitted).

[40] Trustee's Trial Brief at 16.

[41] *Taylor v. Rupp (In re Taylor)*, 133 F.3d 1336, 1342 (10th Cir. 1998).

Eugene's siblings received some cash and a parcel of real property, and the Court should conclude that Eugene received REM. The Trustee's oversimplified characterization of the facts is not supported by the evidence. The Trustee has not even attempted to define what the Trust assets were and simply argues that Michael, Susan, and Nancy each received a parcel of real property, therefore Eugene should have received a parcel of real property. The problem with the Trustee's theory is that based on the evidence before the Court, the Trust assets were not distributed equally but it is not possible to determine the inequality of distribution of Trust assets or that REM and the Ballard Property approximate Eugene's equal share of the Trust assets.

These same evidentiary issues also come into play regarding any alleged inequity that would occur if Elizabeth were to retain her apparent membership interest. Because there is no evidence as to the value of REM or Elizabeth's apparent membership interest, it is impossible for the Court to evaluate equities or determine that it would be inequitable to Eugene if Elizabeth is allowed to retain her membership. The Trustee argues that this Court should impose a constructive trust on the entire ownership of REM in favor of the Trustee, but imposition of the constructive trust the Trustee seeks would deprive Michael, Susan, and Nancy of any potential interest in REM resulting from Ruth's membership interest. It is possible that imposition of a constructive trust as sought by the Trustee may be inequitable to one or more of the siblings.

Although the Debtor may have received less than he was entitled to, the Court does not have sufficient information to support the imposition of a constructive trust on the REM assets in favor of the Debtor. Without knowing the amount of the discrepancy, and without knowing the value of the REM assets, the Court has no way of knowing if the imposition of a constructive trust would remedy the discrepancy or overshoot the discrepancy, creating an even larger imbalance in the Debtor's favor.

**F.  The Trustee Has Failed To Establish His Alter Ego Claim.**

The Court initially notes that the Trustee's variant of the alter ego doctrine may not be

recognized under Utah law.  The alter ego doctrine permits courts to disregard the integrity of

the corporation, view a controlling shareholder as indistinguishable from the corporation, and

allow creditors of the corporation to reach assets of a controlling shareholder.[42]  This type of

claim is often referred to as "piercing the corporate veil."  The doctrine is intended to "prevent

the legal separation between the corporation and the controlling shareholder or shareholders

from being used to perpetuate an injustice on third parties."[43]

The doctrine of alter ego has also evolved in some states "to permit creditors of an

individual shareholder to reach the assets of the corporation when the requirements of the

doctrine are satisfied."[44]  This type of alter ego claim is sometimes referred to as "reverse

piercing," and although the Utah Supreme Court has not definitively adopted this doctrine, it

appears that Utah law allows such a claim.[45]  There is also a variant of the "reverse piercing"

theory where a corporate insider attempts to pierce the corporate veil from within so that the

corporate entity and an individual will be considered one and the same thereby permitting the

individual's assets to be reached for the benefit of the corporation.[46]

---

[42] *Transamerica Cash Reserve, Inc. v. Dixie Power & Water, Inc.*, 789 P.2d 24, 26 (Utah 1990).

[43] *Id.*

[44] *Id.*

[45] *See Colman v. Colman*, 743 P.2d 782 (Utah Ct. App. 1987).

[46] *See Cascade Energy and Metals Corp. v. Banks,* 896 F.2d 1557 (10th Cir. 1990).

The Trustee's alter ego claim is a variant for which this Court finds no support.  The

Trustee does not assert his alter ego claim as a creditor of REM seeking to reach the Debtor's

assets.  The Trustee does not assert his alter ego claim as a creditor the Debtor seeking to reach

REM's assets.[47]  The Trustee is not even asserting his alter ego claim as an insider of REM

seeking to reach the Debtor's assets for the benefit of REM.  The Trustee is simply asserting his

alter ego claim by standing in the shoes of the Debtor, who is not a creditor of REM.  The

Trustee's claim, standing in Eugene's shoes, is that Eugene was the controlling member of REM,

and REM's separateness should nevertheless be ignored for Eugene's benefit.

But even assuming the Trustee's alter ego theory is recognized under Utah law, to invoke

the alter ego doctrine:

> [T]here must be a concurrence of two circumstances: (1) there must be such a
> unity of interest and ownership that the separate personalities of the corporation
> and the individual no longer exist, viz., the corporation is, in fact, the alter ego of
> one or a few individuals; and (2) the observance of the corporate form would
> sanction a fraud, promote injustice, or an inequitable result would follow.[48]

There is little or no evidence that Eugene used REM as his alter ego.  Although the Debtor was

permitted by Susan, the manager of REM, to live on the Ballard Property and was given

unfettered access to the REM Account, there is little or no evidence that Eugene conducted his

and REM's business on an interchangeable or joint basis as if they were one.[49]  Simply

occupying a premises and paying costs associated with occupancy and maintenance of a

---

[47] The Trustee asserted no claim under 11 U.S.C. § 544.

[48] *Transamerica Cash Reserve*, 789 P.2d at 26.

[49] *See Colman*, 743 P.2d at 786 ("The rationale used by courts in permitting the corporate
veil to be pierced is that if a principal shareholder or owner conducts his private and corporate
business on an interchangeable or joint basis as if they were one, he is without standing to
complain when an injured party does the same.").

premises does not create a unity of ownership and interest.  The evidence does not support a finding that there is such a unity of interest and ownership that REM is in fact Eugene's alter ego.

The second prong of the alter ego test is "addressed to the conscience of the court, and the circumstances under which it will be met will vary with each case."[50]  However, the second prong of the test is not met simply because observing the integrity of the corporation "would in some way prevent a creditor of a controlling shareholder from quickly being made whole" or "because the existence of the corporate form is inconvenient for a creditor seeking to pursue the shareholder's assets."[51]  In order to establish that the observance of the corporate form would sanction a fraud, promote injustice, or cause an inequitable result, the claimant must show that their injury is connected to the entities failure to observe its separateness.[52]  The Trustee failed to identify any injury suffered by Eugene or inequitable result that gives rise to an alter ego claim.

Clearly, the Trustee asserts that Eugene has used REM to shield his assets from creditors but there is no evidence that REM ever incurred any debt or had any creditors, other than possibly real property tax creditors.  Eugene's only creditor that was mentioned during the trial in this case was Yukon Excavation.  Yukon's debt was unrelated to any of REM's activities.  Even assuming that funds in the REM Account were Eugene's, that fact alone is not sufficient to establish the elements required for alter ego.  One party's agreement to hold another party's

---

[50] *Messick v. PHD Trucking Serv., Inc.*, 678 P.2d 791, 794 (Utah 1984).

[51] *Transamerica Cash Reserve*, 789 P.2d at 26.

[52] *Cascade Energy and Metals Corp. v. Banks,* 896 F.3d at 1578.

25

property to hinder, delay or defraud creditors may give rise to a legal cause of action, but it does not necessarily establish that the parties are alter egos.

As a final observation, the Court notes that the Trustee cannot prevail on his alter ego claim because he failed to establish that Eugene was a controlling member or manager of REM. The alter ego doctrine, as defined by the Utah Supreme Court, permits courts to disregard the integrity of the corporation, view a controlling shareholder as indistinguishable from the corporation, and permit creditors of the corporation to reach assets of a controlling shareholder. It is clear from this definition that the issue to be resolved in an alter ego action is whether a controlling shareholder's assets should be answerable for corporate debts. While implicated in that issue, the question of whether an individual is a controlling shareholder logically must be determined prior to application of the alter ego doctrine. Specifically, in order for the alter ego doctrine to apply, the evidence must show that the individual who is alleged to be the corporation's alter ego was a controlling shareholder.

While a court may hear some of the same or similar evidence when asked to make a determination that an individual is a controlling shareholder as opposed to whether the alter ego doctrine should be invoked against a controlling shareholder, the alter ego doctrine is not the basis for determining whether an individual is in fact a controlling shareholder. Here, the Trustee has attempted to use the alter ego doctrine to show that Eugene was a controlling member or manager of REM. The essence of the Trustee's argument is that Eugene took certain actions on behalf of REM, making REM his alter ego. Therefore, because REM was his alter ego, Eugene must be a controlling member or manager of REM. The Trustee has put the cart before the horse, and the evidence he has presented does not support his assertion that Eugene was a controlling member or manager of REM.

26

# IV. CONCLUSION

The Trustee argues that the facts in this case are sufficient to establish his claims for resulting trust, constructive trust, or alter ego.  The Trustee's claims fail for two principal reasons.  The first reason is that the facts alleged by the Trustee, even if true, fail to satisfy all of the elements required for his claims.  The second, and most important reason, is that the Trustee has failed to carry his burden of persuasion.  The evidence falls well short of the clear and convincing standard required to support the Trustee's claims of resulting trust or constructive trust, and the Trustee's alter ego claim is not supported by a preponderance of the evidence.

While the evidence is not inconsistent with the Trustee's claims, it is also not inconsistent with the Defendants' claims.  The Defendants maintain that Ruth's assets were not distributed pursuant to the terms of the Trust, but were distributed pursuant to the agreement of the siblings without the requirement of any accounting by Susan.  Whether distribution pursuant to such an agreement is permissible or whether Eugene may have been entitled to a greater distribution pursuant to the terms of the Trust is not the issue before this Court.  The issue before the Court is whether REM and, as the Trustee maintains, the Ballard Property were Eugene's property.  The Trustee argues that Michael, Susan, and Nancy each received a parcel of real property and the Court should conclude that the Ballard Property was therefore Eugene's.  Other than using the logic that each sibling should have received a parcel of real property, the Trustee offers little evidence to support his position. The Trust assets were clearly not distributed equally and there is no evidence that REM or the Ballard Property approximated an equal share of the Trust to which Eugene, or any sibling, would have been entitled.  There is evidence that the real property Michael and Nancy received was not property of the Trust.  The evidence is not inconsistent with Ruth intentionally making inter vivos transfers of property to purposely exclude them from

27

the Trust and any claims of Eugene's creditors, or for some other purpose.  The Defendants

maintain that Eugene was permitted to live on the Ballard Property not because it was his, but

because of his circumstances and their desire to help him.  It was also to their benefit to have

Eugene stay on the property to maintain and secure it.

The evidence is also not inconsistent with the Trustee's suggestion that Defendants and

Eugene were attempting to hinder or delay Eugene's creditors.  While Defendants' actions may

give rise to other claims by the Trustee, this alleged motivation is in fact evidence that the

Defendants never intended that Eugene have a legal or beneficial interest in REM or the Ballard

Property.

Because the Trustee's claims for violation of the automatic stay and unauthorized post

petition transfer are based on the Ballard Property being property of the bankruptcy estate, they

must be dismissed.  Therefore, the Court will dismiss each of the Trustee's causes of action and

grant judgment in favor of the Defendants.

-------------------------------------------- End of Document--------------------------------------------

28

_____ooo0ooo_____

## DESIGNATION OF PARTIES TO BE SERVED

Service of the foregoing **Findings of Fact and Conclusions of Law** shall be served to the parties and in the manner designated below:

**By Electronic Service:**  I certify that the parties of record in this case as identified below, are registered CM/ECF users and will be served notice of entry of the foregoing Order through the CM/ECF system:

Adam S. Affleck     asa@pyglaw.com, debbie@princeyeates.com;docket@princeyeates.com
Randy B. Birch     randy@BirchLawOffices.com, Katie@BirchLawOffices.com